UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JEFFREY M. SIMONEAUX                         CIVIL DOCKET NUMBER

VERSUS                                        12-219-SDD-SCR

E.I. du PONT de NEMOURS & COMPANY

## RULING

Before the Court are two pending summary judgment motions.  Relator, Jeffrey M. Simoneaux ("Simoneaux", has a filed a *Motion for Partial Summary Judgment*,[1] to which Defendant, E.I. DuPont de Nemours & Company ("Dupont") has filed an *opposition*.[2]  DuPont has also filed its own *Motion for Summary Judgment*[3] that Simoneaux has opposed.[4]  Each party has filed reply briefs in support of their respective motions.[5]  For the following reasons, both motions shall be denied.

I.  **INTRODUCTION AND RELEVANT FACTUAL AND PROCEDURAL HISTORY**

DuPont's Burnside facility manufactures and/or processes sulfur trioxide (SO3), sulfur dioxide (SO2), and sulfuric acid.  Simoneaux, a former employee of DuPont's Burnside facility, initiated this lawsuit against DuPont under the *qui tam* provision of the False Claims Act ("FCA").  Simoneaux has claimed that DuPont failed to comply with its obligation under 15 U.S.C. § 2607 of the Toxic Substances and Control Act ("TSCA") to

---

[1] Rec. Doc. 56.
[2] Rec. Doc. 63.
[3] Rec. Doc. 69.
[4] Rec. Doc. 62.
[5] Rec. Doc. 73 and Rec. Doc. 69.

report the release of SO2, SO3, and sulphuric acid at its Burnside Plant to the Environmental Protection Agency (EPA).

It is not in dispute, that during the relevant time period for which Simoneaux bases his claim, DuPont has had periodic leaks of SO2, SO3, and sulphuric acid from its process equipment at its facility in Burnside, Louisiana. The parties also concur that "an exposure to sulphur dioxide, sulphur trioxide or sulphuric acid in sufficient dose and duration can cause human health effects, and that those effects have been known for years generally in the scientific community."[6] Furthermore, SO2 and SO3 are known to be carcinogenic and are listed under the TSCA.

Both parties have filed what the Court deems to be cross *motions for summary judgment*[7] disputing whether DuPont had "substantial risk information" so as to trigger its reporting obligation under Section 8(e) of the TSCA. In addition, DuPont reasserts is its previous summary judgment argument that that that Simoneaux's FCA retaliation claim be dismissed because he cannot satisfy his burden of demonstrating that he made DuPont aware of his concern about possible fraud.

## II.  LAW

### a. Summary Judgment Standard

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from

---

[6] Rec. Doc. 53-1, p. 7.
[7] Rec. Doc. 53; Rec. Doc. 56.
[8] Fed.R.Civ.P. 56(a)(West 2014).

making credibility determinations or weighing the evidence."[9] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[10] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[11] However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[12]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[13] All reasonable factual inferences must be resolved in favor of the nonmoving party.[14] Nevertheless, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence

---

[9] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008)(quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

[10] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (5th Cir. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, at 323-25, 106 S.Ct. at 2552).

[11] *Rivera v. Houston Independent School Dist.*, 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)(internal quotations omitted)).

[12] *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(internal citations omitted)).

[13] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). See also, *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 ("If a rational trier could not find for the nonmoving party based on the evidence presented, there is no genuine issue for trial.").

[14] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

supports his claim."[15]  "Conclusory allegations unsupported by specific facts, however, will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"[16]  Ultimately "[t]he substantive law dictates which facts are material."[17]

### b. False Claims Act and the TSCA

In this case, Simoneaux has asserted a "reverse false claim" under the False Claims Act ("FCA").  Section 3729(a)(1)(G) of the FCA imposes liability on any person who:

> knowingly makes, uses or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.[18]

For purposes of the FCA, the term "obligation" is defined as "an established duty, whether or not fixed, arising from … statute or regulation."[19]  The term knowingly" is also defined under the FCA as follows:

> (1) the terms 'knowing' and 'knowingly'—
>   (A) mean that a person, with respect to information--
>     (i)   has actual knowledge of information;
>     (ii)  acts in deliberate ignorance of the truth or falsity of the information; or
>     (iii) acts in reckless disregard of the truth or falsity of the information; and
>   (B) require no proof of specific intent to defraud.[20]

---

[15] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010)(citing *Ragas v. Tenn. Gas Pipeline, Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).
[16] *Nat'l. Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).
[17] *Canady v. Bossier Parish School Bd.*, 240 F.3d 437, 439 (5th Cir. 2001).
[18] 31 U.S.C. §3729(a)(1)(G).
[19] 31 U.S.C. §3729(b)(3).
[20] 31 U.S.C. §3729(b).

Here, Simoneaux contends that DuPont had a statutory duty arising under Section 8(e) of the TSCA, which provides:

> Any person who manufactures, processes, or distributes in commerce a chemical substance or mixture and who obtains information which reasonably supports the conclusion that such substance or mixture presents a substantial risk of injury to health or the environment shall immediately inform the Administrator [of the EPA] of such information unless such person has actual knowledge that the Administrator has been adequately informed of such information.[21]

According to Simoneaux, DuPont had a duty to report the sulphuric gas leaks at its Burnside facility to the EPA, but instead, DuPont knowingly concealed and acted in deliberate ignorance of and in reckless disregard of the truth or falsity of the "Substantial Risk Information" for over two years, thereby avoiding or decreasing its monetary penalties owed to the Government.

## III.  ANALYSIS

The parties are in agreement that Simoneaux must satisfy each of the following *prima facie* elements to establish a violation under Section 8(e) of the TSCA: (1) DuPont manufactured, processed or distributed in commerce, a chemical substance or mixture; (2) DuPont obtained information "which reasonably supports the conclusion that such substance or mixture presents a substantial risk of injury to health or the environment"; and (3) DuPont had an obligation to and failed to immediately inform the EPA Administrator of such information.  The parties are in agreement that the first *prima facie* element has been satisfied.  It is the second element that has become the bone of contention between parties' and the central focus of their respective summary judgment motions.

---

[21] 15 U.S.C. §2607(e).

   *1. Substantial Risk Information*

The parties are at odds as to whether DuPont had Substantial Risk Information to trigger its reporting obligation under the TSCA. Simoneaux argues that "it is clear that DuPont possessed Substantial Risk Information and intentionally ignored that information in an effort to decrease its monetary obligations to the United States."[22] In support of his stance, Simoneaux points to evidence showing that (1) DuPont has been operating with continuous SO2, SO3, and sulphuric acid gas leaks over the last two years, (2) DuPont employees and at least one citizen made complaints about gas leaks at the Burnside facility; and (3) individuals working on or nearby the Burnside facility sustained various injuries related to sulfuric gas leaks.

DuPont contends that there is no evidence in this case upon which a jury could conclude that DuPont's releases actually contaminated the environment. DuPont further argues that Simoneaux has no evidence that any of the releases at issue contained the necessary dosage, or existed for the necessary duration of time to cause the scientifically known health effects related to exposure to SO2, SO3, and sulphuric acid.[23] Therefore, DuPont contends that Simoneaux cannot satisfy his evidentiary burden of proof or make the necessary showing that DuPont had Substantial Risk Information in its possession.

---

[22] Rec. Doc. 56-2, p. 8.
[23] DuPont's ultimate position is that it had no obligations under the TSCA Section 8(e) because it did not measure the concentration levels of the chemical releases on its Burnside property.

While both parties cite to various cases and regulatory guidance, the Court finds that the *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation* (herein after "*MTBE")* decision is most instructive.[24]

### 2. The MTBE Decision

In the *MTBE* case, the plaintiffs sued Exxon Mobil Corporation and Lyondell Chemical Company for violating section 8(e) of the TSCA for failure to inform the EPA of "information which reasonably supports the conclusion" that MTBE or releases of gasoline with MTBE into the environment present "a substantial risk of injury to health or the environment.[25]" In particular, plaintiffs filed suit against the defendants to compel them to provide the EPA with four types of information, including "notification whenever defendants [knew] that a substantial amount of gasoline with MTBE has been spilled, leaked or otherwise released into the environment (e.g., discovery of a leaking underground storage tank.)."[26]  The *MTBE* court denied the defendants motion for summary judgment on this particular claim.[27]

In its analysis, the *MTBE* court emphasized that "[t]he essential aspect of plaintiffs' section 8(e) claim involves proving that defendants have information that should be provided to the EPA."[28]  In reaching a determination of whether this burden

---

[24] *In re Methyl Tertiary Butyl Ethyl ("MTBE") Products Liability Litigation*, 559 F.Supp.2d 424 (S.D.New York 2008).
[25] *Id.* at 426.
[26] *Id.*
[27] The MTBE court denied the defendants' summary judgment motion to the extent the claims were based on "(1) notice about releases of gasoline with MTBE into the environment, (2) information generated once the gasoline release has been discovered, and (3) studies about MTBE's effect on the taste and odor of water."  But the court granted summary judgment "with respect to any information that plaintiffs believe a reasonable manufacturer would have generated to determine the potential liability for MTBE contamination in ground water."  *Id.* at 442.
[28] *Id.* at 435.

has been satisfied, the court identified two questions that a jury must resolve when presented with a claim arising under Section 8(e) of the TSCA:

> *First*, have the plaintiffs proven by a preponderance of the evidence that defendants 'obtain[ed] information which reasonably supports the conclusion that such substance or mixture [i.e., MTBE or gasoline with MTBE] presents a substantial risk of injury to health or the environment? *Second*, if so, have the defendants proven by a preponderance of the evidence that they had 'actual knowledge that the [EPA] Administrator has been adequately informed of such information?'[29]

The *MTBE* defendants argued that releases of gasoline with MTBE were excluded from disclosure to the EPA under federal law, including the TSCA. The *MTBE* court, however, did not agree.

The *MTBE* court explained that such arguments "ignore[d] the plain language of the TSCA. Whether information should be reported under section 8(e) depends on whether the information 'reasonably supports the conclusion that such substance or mixture presents a substantial risk of injury to health or the environment….'"[30] Acknowledging the broad definitions of environment under the TSCA, the *MTBE* court concluded that "a reasonable jury could easily find that spills, leaks or releases of gasoline containing MTBE present a 'substantial risk of injury' to 'water' as well as 'all living things' and must be reported to the EPA."[31] The *MTBE* court further emphasized how extraneous regulations and statutes "are irrelevant to a determination of whether defendants 'have obtain[ed] information which reasonably supports the conclusion that such substance or mixture presents a substantial risk of injury to health or the environment.'"[32]

---

[29] *Id.*
[30] *Id.* at 436.
[31] *Id.*
[32] *Id.* at 437.

Considering the *MTBE* decision in light of the evidence submitted by the parties on summary judgment, the Court finds that there is a genuine issue of material fact as to whether DuPont had substantial risk information in its possession so as to trigger its reporting obligation under section 8(e) of the TSCA.  Contrary to DuPont's position otherwise, the jury will not be required to determine whether actual contamination occurred as a result of the gas releases at the Burnside facility.  Rather, the jury will be asked to determine whether DuPont possessed information which "reasonably supports the conclusion" that its SO2, SO3, and sulphuric acid gas leaks "present[ed] a substantial risk of injury to health or the environment."  Simoneaux has offered evidence, including reports of gas leaks by the general public and DuPont employees, injuries sustained by workers on and nearby DuPont's Burnside facility, and DuPont's practices for detecting and repairing gas leaks.  The Court finds that collectively this information creates a genuine issue of material fact as to whether DuPont had Substantial Risk Information in its possession.  Furthermore, while precise dosage or concentration data is unavailable, this, in and of itself, does not warrant summary judgment on DuPont's behalf.  A reasonable trier of fact could determine, based on certain physical human reactions to exposure in combination with expert testimony, that a certain level of gas was present such that DuPont had Substantial Risk Information in its possession and either intentionally ignored or concealed this information or acted with deliberate indifference so as to avoid its obligation under the TSCA.

Ultimately, the evidence relied upon by the parties in support of their respective motions reinforces the Court's ultimate finding that there is a genuine issue of material fact as to whether DuPont had Substantial Risk Information in its possession so as to

trigger its reporting requirements under section 8 of the TSCA. The Court further finds that a genuine issue of material fact exists as to whether DuPont acted with deliberate ignorance or with reckless disregard of the truth or falsity of the Substantial Risk Information. Additionally, certain credibility determinations will need to be made when weighing the testimony of the parties' witnesses, which is best reserved for the trier of fact. Accordingly, the parties' motions for summary judgment shall be denied on these grounds.

### 3. Simoneaux's Retaliation Claim

DuPont has also re-urged its argument that Simoneaux's retaliation claim should be dismissed on summary judgment. The Court recognizes that successive motions for summary judgment are generally disfavored unless it is based on an expanded record.[33] However, the Fifth Circuit has explained that whether successive motions for summary judgment should be permitted "best lies at the district court's discretion."[34] While it is true that DuPont's prior summary judgment motion was dismissed in its entirety and the record before the Court has not been expanded, the Court acknowledges that it never reached the merits of whether Simoneaux could produce evidence showing that he informed his employer about his concern that they were defrauding the government by not reporting the gas leaks to the EPA. After considering the evidence in the record before it, the Court finds there are genuine issues of material fact that precludes summary dismissal of Simoneaux's retaliation claim. The record contains evidence that could lead a reasonable trier of fact to find that Simoneaux put his employer, DuPont, on notice about his concerns about the company's failure to report the sulfuric gas leaks

---

[33] *Enlow v. Tishomingo County, Ms.*, 962 F.2d 501, 506 (5th Cir. 1992).
[34] *Id.*, at 507.

as required by law to a federal agency, the EPA, and that he was concerned about defrauding the Government. Accordingly, DuPont's motion for summary judgment shall be denied as to Simoneaux's retaliation claim.

## IV.  CONCLUSION

For the foregoing reasons, Simoneaux's *Motion for Partial Summary Judgment*[35] and DuPont's *Motion for Summary Judgment*[36] are hereby denied.

Signed in Baton Rouge, Louisiana, on <u>November 10, 2014</u>.

*Shelly D. Dick*

**JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[35] Rec. Doc. 56.
[36] Rec. Doc. 69.