# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

JEFFREY M. SIMONEAUX,
ET AL.

VERSUS

E.I. du PONT de NEMOURS
AND COMPANY

CIVIL ACTION

NO. 12-219-SDD-SCR

## RULING

Before the Court is the Relator Jeffrey M. Simoneaux's *Renewed Motion for Judgment as a Matter of Law, Motion for New Trial Under Rule 59, and Motion for Relief of Judgment Under Rule 60*[1] and Relator's *Supplemental Motion for Relief from Judgment Under Rule 60(b)(3) and Alternatively Motion to Set Aside Judgment Under Rule 60(d)(3)*.[2] Both Motions are opposed by the Defendant, E.I. DuPont de Nemours and Co. (DuPont).[3]

**I.   RULE 50(b) JUDGMENT AS A MATTER OF LAW**

Relator moved for Judgment as a Matter of Law at the close of Relator's case in chief and again at the close of all the evidence. The Motion was denied. Relator renews his Motion for Judgment as Matter of Law under Rule 50(b). Judgment as a matter of law should be granted only if "there is no legally sufficient evidentiary basis for a reasonable jury to find for the party on that issue."[4] The Court "draw[s] all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations

---

[1] Rec. Doc. 213.
[2] Rec. Doc. 241.
[3] Rec. Docs. 238 and 258.
[4] Fed. R. Civ. P. 50(a)(1).

1

or weigh the evidence."[5] This Court has recently recognized that "[c]ourts should be wary of upsetting jury verdicts, and should do so only when there is not a legally-sufficient evidentiary basis for the jury's verdict."[6]

The Court denies Relator's 50(b) *Motion* for the same reasons orally assigned by the Court in denying Relator's 50(a) *Motion*.

## II. RULE 59 MOTION FOR NEW TRIAL

Relator moves for new trial under Rule 59 on two grounds. First Relator contends that the jury's verdict was against the great weight of the evidence. The verdict of a jury must not be disturbed lightly. "[F]acts once found by the jury in the context of the civil trial are not to be reweighed and a new trial granted lightly."[7] In evaluating a challenge that the verdict is against the weight of the evidence, "the court weighs all the evidence and need not view it in the light most favorable to the nonmoving party.[8] A motion for a new trial should not be granted unless the verdict is against the great weight of the evidence, not merely against the preponderance of the evidence."[9] After considering the totality of the evidence that was before the jury, the Court cannot conclude that the verdict was against the weight of that evidence. Accordingly, the Court declines to disturb the jury's verdict on those grounds.

Secondly, Relator moves for new trial on the grounds of newly discovered evidence. A motion for relief from a judgment on the grounds of newly discovered

---

[5] *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000).
[6] *Painter v. Suire,* No. 12-CV-00511-SDD-SCR, 2014 WL 6801728, at *2 (M.D. La. Dec. 2, 2014) (citing *Roman v. Western Mfg., Inc.,* 691 F.3d 686, 692 (5th Cir. 2012)).
[7] *Spurlin v. General Motors Corp.,* 528 F.2d 612, 620 (5th Cir. 1976); *Chilson v. Metro. Transit Auth.*, 796 F.2d 69, 70 (5th Cir. 1986).
[8] *Beckham v. Louisiana Dock Co.*, 124 F.App'x 268, 270 (5th Cir. 2005) (citing *Smith v. Transworld Drilling Company,* 773 F.2d 610, 612 (5th Cir.1985).
[9] *Beckham v. Louisiana Dock Co.,* 124 F. App'x 268, 270 (5th Cir. 2005), citing, *Dresser-Rand Co. v. Virtual Automation Inc.,* 361 F.3d 831, 838-39 (5th Cir. 2004)).

evidence is addressed to sound discretion of district court.[10] To warrant a new trial on the grounds of newly discovered evidence, "the movant must show that the evidence existed at the time of the trial, was discovered following the trial, that [movant] used due diligence to discover the evidence at the time of the trial, that the evidence is not merely cumulative nor impeaching, that it is material, and that a new trial in which the evidence was introduced would probably produce a different result."[11] New evidence that would merely affect the weight and credibility of trial evidence may be considered cumulative and thus insufficient to warrant a new trial.[12] The burden is on the moving party to demonstrate that the new evidence clearly weighs in favor of a new trial.[13]

Relator asserts that the following three pieces of newly discovered evidence mandate a new trial under Rule 59.

### A. Corporate Engineering Standard

Relator, argues that a document titled "Corporate Engineering Standard: P-42E On-Line Leak Repair of Piping Components"[14] ("Engineering Standard"), which was produced by DuPont in other litigation,[15] was responsive to discovery requests in this case but not produced by DuPont, and relator argues that this document "would have likely altered the outcome of Mr. Simoneaux's case".[16]

---

[10] *Dugan v. U.S.*, 521 F.2d 231, 233 (5th Cir. 1975).
[11] *Chilson v. Metro. Transit Auth.*, 796 F.2d 69, 72 (5th Cir. 1986) (citing *Johnson Waste Materials,* 611 F.2d 593, 597 (5th Cir. 1980)). *See also Diaz v. Methodist Hosp.,* 46 F.3d 492, 495 (5th Cir. 1995); *Osburn v. Anchor Laboratories, Inc.,* 825 F.2d 908, 917 (5th Cir. 1987), *reh'g denied,* 834 F.2d 425 (5th Cir.1987), *cert. denied,* 485 U.S. 1009, 108 S.Ct. 1476, 99 L.Ed.2d 705 (1988); *Johnston v. Lucas,* 786 F.2d 1254, 1257 (5th Cir. 1986); *La Fever, Inc. v. All–Star Ins. Corp.,* 571 F.2d 1367, 1368 (5th Cir. 1978).
[12] *Dunn v. Consol. Rail Corp.,* 890 F.Supp. 1262, 1269 (M.D. La. 1995). *See* 11 Charles Alan Wright et al., Federal Practice and Procedure, § 2808, (3d ed.1973)).
[13] *Diaz v. Methodist Hosp.,* 46 F.3d 492, 495 (5th Cir. 1995); *Hesling v. CSX Transp., Inc.*, 396 F.3d 632 (5th Cir. 2005).
[14] Rec. Doc. 213-4.
[15] *Scott v. E.I. duPont deNemours & Co.*, No. 3:13-CV-741-SDD-SCR (M.D. La. filed Nov. 15, 2013).
[16] Rec. Doc. 213-1, p. 3.

This Engineering Standard specifies DuPont's procedure "for implementing a temporary on-line leak repair of piping components".[17] At issue in this case were leaks of SO2 and SO3 from DuPont manufacturing process equipment referred to as the HIP, CIP, and Converter.[18] There was no evidence that this manufacturing equipment comprised "piping components". Relator, nonetheless, argues that the newly discovered Engineering Standard was material and relevant because according to the document "the concepts in it can be used to implement temporary on-line leak repairs for other pressure equipment".[19] Relator argues that the leaking HIP, CIP, and Converter were "pressure equipment" to which the newly discovered Engineering Standard applied and that the Engineering Standard, if applied, would have mandated a plant shutdown to make permanent repairs.[20]

It was undisputed that DuPont's process equipment, specifically the HIP, CIP, and Converter leaked and that, while awaiting new equipment, DuPont employed temporary measures[21], namely a vacuum hose recovery system, to capture the leaks while continuing to operate the Burnside Plant. The evidence established that, owing

---

[17] Rec. Doc. 213-4.
[18] The Hot Interpass Exchanger ("HIP") and the Cold Interpass Exchanger ("CIP") exchange heat from one gas source to another. The Converter converts SO2 into SO3. DuPont conceded that unknown quantities of SO2 and SO3 leaked from the HIP, CIP and Converter, but DuPont contends that the leaks were substantially captured and therefore did not reasonably support the conclusion that the leaks presented a "substantial risk of injury to health or the environment" under TSCA.
[19] Rec. Doc. 213-1, p. 3.
[20] According to the newly discovered Engineering Standard if precise location of the leaks could not be determined or if the integrity of the materials surrounding the leaks could not be verified the Engineering Standard mandated that "unit must be shutdown to make a permanent repair." (Citing Rec. Doc. 213-4). Relator argues that the trial evidence established that "the integrity of the surrounding material of the leaking equipment at issue in this case was unsound and that the precise leak locations could not all be identified." Rec. Doc. 21-1, p. 4.
[21] The Court uses the terms "temporary measures" not as an indication of the duration of the leak capture measures implemented by DuPont but rather as a means of expressing the fact that these measures were not intended by DuPont to be permanent repairs or process modifications.

largely to the nature of the leak capture measures implemented by DuPont,[22] the precise location of the leaks could not be determined nor could the integrity of the materials surrounding the leaks be verified. According to the subject Engineering Standards, if either of these conditions existed, the unit had to be shut down for permanent repairs.

Assuming arguendo that these newly discovered Engineering Standards applied to the HIP, CIP, and Converter at issue, and assuming that the Engineering Standard mandated a shutdown, this evidence is nonetheless immaterial and irrelevant to the ultimate inquiry which the jury was called upon to answer, namely:

> "Do you find by a preponderance of the evidence, that DuPont obtained information that reasonably supported the conclusion that the leaks of chemicals or chemical mixtures at its Burnside facility presented a substantial risk of injury to health or the environment?"[23]

Simply put, whether DuPont was obliged by its Engineering Standards to shut down the units involved is not probative of whether DuPont obtained information that reasonably supported the conclusion that the leaks of chemicals or chemical mixtures at its Burnside facility presented a substantial risk of injury to health or the environment.

Accordingly, the Court finds that the "Corporate Engineering Standard: P-42E On-Line Leak Repair of Piping Components" is not material, nor would its introduction into evidence probably have resulted in a different verdict.

---

[22] An extensive system of insulation, pipes and hoses designed to capture and re-process SO2 and SO3 gas leaks from the HIP, CIP and Converter. See for example, Rec. Doc. 203 (Trial Exhibits: Pla-403-4, Pla-403-5, Pla-403-14, Pla-403-15, Pla-403-16, Pla-403-18, and Def-185).
[23] Rec. Doc. 202, Jury Verdict Question #1.

### B. Management of Change Document

Relator maintains that a newly discovered "management of change" document[24] would have established that the vacuum hose recovery system DuPont implemented to capture the known leaks of SO2 and SO3 from the HIP, CIP, and Converter was only to be used on "*minor* leaks". Relator argues that the trial evidence showed that the "leaks at issue were not minor leaks".[25]

Assuming arguendo that this newly discovered "management of change" document shows that DuPont improperly utilized vacuum hose recovery to mitigate the leaks, this evidence is not probative of whether DuPont had substantial risk information. The management of change document is, therefore, immaterial and does not rise to the level of evidence that probably would have resulted in a different verdict.

### C. Additional Leak Calculations

Relator argues that two newly discovered leak calculation spreadsheets created by DuPont require a new trial. The newly discovered leak calculation documents[26] contain notes of trial witnesses,[27] provide dates, estimated size of leaks, estimated duration of leaks, the concentration of SO2 and/or SO3 entering various phases of the converter, an estimated percentage of gas captured by the hose system, leak rates, and temperatures. Relator argues, and the Court agrees, that these newly discovered leak calculation spreadsheets provide significantly more quantifiable information about the subject leaks than the calculations previously made available to Relator and offered at

---

[24] Rec. Doc. 213-5 Potentially 1-C (Exhibit 1-C Under Seal).
[25] Rec. Doc. 213, p. 5.
[26] Rec. Doc. 213-3 (Exhibit 1-A).
[27] Kerry Long, Luis Chu and Dan Monhollen.

trial.[28] These newly discovered leak calculations are not merely cumulative of other trial evidence because they provide substantially more information regarding leak quantity, concentration, duration, and capture rates.

DuPont defended the case, in part, by arguing that dose makes the poison and arguing that the Relator had little if any evidence of the dose or quantity and concentration of the $SO_2$ and $SO_3$ leaks at the Burnside plant.[29] The Court agrees with DuPont's contention that "dose makes the poison" and this newly discovered leak calculation evidence is certainly material to the question of dose. According to DuPont's expert toxicologist, even Lima Beans in sufficient doses are toxic or poisonous.[30] $SO_2$ and $SO_3$ in sufficient quantities and concentrations are toxic to humans and the environment. It was undisputed that $SO_3$ in the atmosphere converts to sulfuric acid mist a/k/a "acid rain". Any information regarding the quantity and concentration and duration of the leaks is probative of whether DuPont had "substantial risk information".

In the Court's view, this newly discovered leak evidence is material and not simply cumulative. These leak calculations are relevant to the ultimate issue, that is, did DuPont have substantial risk information. However, relevance is not the end of the inquiry. The movant must demonstrate that this newly discovered evidence *probably* would have resulted in a different verdict. Unfortunately, without fact or expert testimony to explain the calculations, the comments of the persons who made the calculations or the conclusions reached, the Court is unable to meaningfully evaluate the weight and persuasiveness of what the Court finds to be relevant evidence. Movant has not demonstrated that the newly discovered leak calculations *probably* would have

---

[28] Rec. Doc. 203 (Trial Exhibits: Pla-130, Def-154, Def-153, and Def-152).
[29] Rec. Doc. 245, pp. 51-52. (referencing Dr. Milner's, DuPont's toxicologist, testimony).
[30] Rec. Doc. 245, p. 51.

resulted in a different verdict. Accordingly, the Court denies Relator's *Rule 59 Motion for New Trial* on the grounds of newly discovered evidence.

## III.     RULE 60(b)(3) NEW TRIAL ON GROUNDS OF FRAUD

Relator also moves to set aside the jury's verdict on the grounds of fraud under Rule 60(b)(3), which allows a court to "relieve a party . . . from a final judgment, order or proceeding" on the grounds of "fraud . . ., misrepresentation, or misconduct by an opposing party."

A party seeking relief from a judgment on the allegation that an adverse party has obtained a verdict through fraud, misrepresentation, or other misconduct has the burden of proving the allegations by clear and convincing evidence. "[T]he conduct complained of must be such as to prevent the losing party from fully and fairly presenting its case or defense."[31] The rule applies to misconduct in withholding information called for by discovery and it does not require that the information withheld be of such a nature as to alter the result in the case.[32] "The purpose of the rule is to afford parties relief from judgments which are unfairly obtained, not those which may be factually incorrect."[33] "Rule 60(b)(3) does not require that the information withheld be such that it can alter the outcome of the case."[34] Rather, it "is aimed at judgments which were unfairly obtained, not at those which are factually incorrect. The rule is remedial and should be liberally construed."[35]

---

[31] *Longden v. Sunderman,* 979 F.2d 1095, 1103 (5th Cir. 1992) (citing *Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1339 (5th Cir. 1978).); *White v. Fox*, 576 F.App'x 327, 332 (5th Cir. 2014); *Diaz,* 46 F.3d at 496.
[32] *Dunn,* 890 F.Supp. at 1269.
[33] *Diaz,* 46 F.3d at 496 (citing *Johnson v. Offshore Exploration, Inc.,* 845 F.2d 1347, 1359 (5th Cir. 1988));; *See also Dunn,* 890 F.Supp. at 1269.
[34] *Hesling,* 396 F.3d at 641.
[35] *Id.*

### A. Corporate Engineering Standards and Memorandum of Change

The Court finds that this newly discovered evidence was called for in pretrial discovery but was not produced by DuPont. However, as set forth above, the Court finds that the Corporate Engineering Standard and the Management of Change document are irrelevant to the central inquiry; accordingly this evidence, although undisclosed by DuPont notwithstanding a valid discovery request, is not of such that it prevented Relator from fully and fairly presenting its case or defense.

### B. Leak Calculations

The additional leak calculations revealed after trial pose a more difficult question. The calculations were called for by the Relator in discovery.[36] DuPont produced some[37] but apparently not all calculations. "Misconduct may be shown by evidence that the opposing party withheld information called for by discovery".[38] As previously stated, without testimony to explain the calculations and the conclusions of the calculations, the Court is unable to meaningfully evaluate the weight and persuasiveness of these newly discovered leak calculations. However, unlike Rule 59, Rule 60(b)(3) does not require a finding that the new evidence would probably change the outcome. It is enough if new evidence prevented the losing party from fully and fairly presenting its case. Given the dearth of information regarding the size, scope, and duration of the leaks, the Court concludes that any additional information pertaining to the estimated size of leaks, estimated duration of leaks, the concentration of $SO_2$ and/or $SO_3$ entering various phases of the converter, estimated percentage of gas captured by the hose system,

---

[36] Rec. Doc. 213-9 (Request for Production Nos. 33 and 68) and 213-11 (Request for Production Nos. 2, 13, and 14).
[37] Rec. Doc. 213-1, p. 5. (Trial Exhibit Pla-130).
[38] *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 156-57 (5th Cir. 2004) (citing *Rozier,* 573 F.2d at 1339).

9

leak rates, and temperatures would have enhanced Relator's ability to fully and fairly present his case.

IV. **UNDISCLOSED OSHA CITATIONS**

The Court now turns to the Relator's *Supplemental Motion for Relief From Judgment under Rule 60(b)(3)*.[39] After trial, Relator learned that DuPont was cited and fined by OSHA for five (5) violations of the Occupational Health and Safety Act of 1970, on November 14, 2014.[40] Relator maintains that the OSHA "Citation and Notification of Penalty", issued approximately 2 months before trial, was responsive to discovery requests by Relator[41] but was withheld by DuPont. Relator argues that three (3) of the five (5) citations issued and fines imposed by OSHA are germane to the issues in this case and that DuPont's failure to produce the OSHA Citation impeded a full and fair adjudication of his claims.

> OSHA Citation Item 3[42] charged that DuPont failed to:
>
> ensure that the Advanced Drainage System (ADS) polyethylene single wall pipe/hose used in conjunction with the Maintenance Vent Header to mitigate S02 and S03 leaks from process equipment which includes, but is not limited to, the CIP (HX-532), Converter (R-502), HIP (HX-531), Hot Gas Bypass (DT-1803), and Superheater (HX-530) was designed for use in the process application and constructed of material suitable for application in a process characterized by high temperatures and the formation of acid in the presence of moisture.

The Item 3 violation was noted by OSHA to be "Serious". The proposed penalty was $7,000.00 and DuPont was ordered to abate the condition by 3/27/2015.[43] A plain

---

[39] Rec. Doc. 241.
[40] "Citation and Notification of Penalty", issued to DuPont, Burnside facility on November 14, 2014. Rec. Doc. 241-4.
[41] Relator's Request No. 47 called for DuPont to "Produce all documents provided to or received from OSHA by DuPont concerning gas leaks and/or employee exposure or potential exposure to S02 and/or S03 at the DuPont Burnside facility between December 1, 2011 and the present." (Rec. Doc. 213-9).
[42] Rec. Doc. 241-4.

10

reading of this violation suggests that DuPont failed to insure that some of the parts and materials used by DuPont in the elaborate hose and pipe designed to capture known and continuous SO2 and SO3 leaks from the process equipment were "designed for use in the process application and constructed of material suitable for application in a process characterized by high temperatures and the formation of acid in the presence of moisture". In the Court's view, this violation speaks to the suitability and possibly the efficacy of DuPont's remedial measures which were intended to capture known acid leaks.

In 2013, Relator propounded the following Request for Production to DuPont:

Request No. 47:

Produce all documents provided to or received from OSHA by DuPont concerning gas leaks and/or employee exposure or potential exposure to S02 and/or S03 at the DuPont Burnside facility between December 1, 2011 and the present.

During the pendency of this litigation, Relator learned that OSHA performed several site inspections at DuPont's Burnside plant in 2014. In fact, the subject OSHA Citation reveals that OSHA performed inspections at DuPont Burnside during the period of 5/14/2014 – 10/31/2014.[44] In October 2014, Relator propounded a FOIA request to OSHA, which yielded no records. On October 27, 2014,[45] counsel for Relator called upon DuPont to supplement its responses to discovery, Relator specifically called upon DuPont to produce any OSHA documents:

> "Also, I wanted to remind you of DuPont's obligation to supplement its production of documents. I imagine there are additional documents pertaining to the hose system, gas leaks, the recent visit by OSHA, etc. that are responsive to our requests. If those can be

---

[43] *Id.*
[44] *Id.*
[45] Rec. Doc 213-8.

11

produced in time to be specifically listed in the pretrial order that would be helpful."[46]

The OSHA citation at issue was issued to DuPont approximately 2 weeks following the Relator's specific request that DuPont supplement its responses to discovery.[47]

DuPont opposes the Rule 60(b)(3) Motion on the grounds that Relator fails to prove fraud or misconduct relating to the OSHA citation by clear and convincing evidence. DuPont argues that there was no intent or effort by DuPont to hide the OSHA Citation. Rather, DuPont maintains that DuPont's plant manager, Tom Miller, posted the OSHA citation at the plant 'for all to see' after he received it in November of 2014. DuPont further argues that the subject OSHA citation was publicly available on the internet. DuPont distinguishes *Rozier v Ford Motor Co.*, a case relied upon Relator, on the grounds that DuPont was not *ordered* to produce the OSHA citation and that DuPont properly objected to Relator's discovery request as "overbroad". Finally, DuPont argues Relator cannot show that he was prevented from fully and fairly presenting his case by not having the OSHA citation because DuPont argues that the OSHA citation is inadmissible hearsay.

The admissibility of the OSHA citation is immaterial to the Rule 60(b)(3) inquiry before the Court. Relief from a judgment under Rule 60(b)(3) is "aimed at judgments which were unfairly obtained."[48] The Fifth Circuit directs that the rule is remedial and to be liberally construed.[49] Indeed, the Fifth Circuit notes that "admissibility is not a *sine*

---
[46] *Id.*
[47] Rec. Doc. 213-8.
[48] *Rozier,* 573 F.2d at 1339.
[49] *Id.* at 1346 (citing *Atchison, Toreka and Santa Fe Ry. Co. v. Barrett*, 246 F.2d 846, 849).

12

*qua non* for granting relief under Rule 60(b)(3) where the wrongful withholding of information during discovery is alleged, it may be a relevant factor in weighing the prejudice suffered by the moving party."[50]

The vexing question is whether Relator would have presented his case differently if he had had the benefit of the OSHA citation or the newly discovered leak calculations. As previously mentioned, due to the technical nature of the calculations and the accompanying notes of the persons who performed the calculations, the Court is unable to ascertain whether the leak calculations would have affected the presentation of the evidence. Relator contends that the OSHA citation usurped his ability to fully and fairly present his case. Relator maintains that he was prevented from cross examining witnesses, most notably, the plant manager, Tom Miller[51]; that he was precluded from rebutting DuPont's defense that it had not been subject to regulatory action despite being highly regulated; and that the hose system which DuPont styled a "containment system" was not a containment system but merely a mitigation system.

In opposition to Relator's Rule 60(b)(3) Motion DuPont offered transcript excerpts of the trial. In opening statement DuPont argued:

> OSHA, The Occupational Health and Safety Administration, their primary duty is to make sure that employees . . . to make sure that those workers are safe.
> * * *
> Mr. Simoneaux wants you to look at evidence that's different, or come to a different conclusion than OSHA has, or that the Louisiana Department of

---
[50] *Id.* at 1343.
[51] DuPont argues that Relator had the opportunity to cross-examine DuPont's plant manager about the 2014 OSHA inspections and whether "OSHA found any issues or flaws at the plant." Rec. Doc. 258, p. 6. One of the fundamental purposes of pretrial discovery is to ameliorate the harm that comes from the need to cross examine a party opponent on a matter or subject which is largely unknown to the examiner. In the Court's view, one of the aims of discovery is to prevent placing parties between "devil and the deep blue sea", that being the "devil" of needing a certain piece of information or evidence and the "deep blue sea" or risk of asking for the information, in the presence of the jury, without knowing what the answer will reveal.

13

Environmental Quality has. Because he has also been in touch with them. He's called the Louisiana Department of Environmental Quality and they have come out to the plant. And you will see in the documents that are put in during this case that they filled out inspection forms. . . .There aren't any citations. There aren't any citations from the Louisiana Department of Environmental Quality.[52]

Against the backdrop of this opening statement, counsel for DuPont asked plant manager Tom Miller the following:

Q: And you've talked about the fact that OSHA has been made aware of the leaks by several anonymous calls. Have they taken any action against the plant in terms of telling the plant these leaks are not safe for employees to work around?

A: No.[53]

DuPont's closing argument provides the bookend for this theme:

So what about OSHA, the Occupational Health and Safety Administration? You heard the testimony of Tom Miller. Mr. Miller is the plant manager. He sat through the entirety of this trial. He said you talked about the fact that OSHA had been made aware of leaks by several anonymous calls. Have they taken any action against the plant in terms of telling the telling the plant, these leaks are not safe for employees to work around? No. OSHA is aware. OSHA has not taken any steps to shut down this plant.[54]

Dupont argues that Miller's testimony was not perjury and that DuPont's opening and closing statements were accurate. The Court agrees. The opening and closing statements and the examination of Tom Miller were carefully crafted and technically accurate. However, the Court cannot help but to conclude that the Relator could have rebutted DuPont's inferences that OSHA took no action with evidence of the OSHA Citation at issue. Once DuPont opened the "OSHA door", at a minimum, the OSHA Citation would have provided fertile ground for the Respondent's cross examination of DuPont's plant manager. Hence, the Court concludes that DuPont's failure to produce

---

[52] Rec. Doc. 258-2.
[53] Rec. Doc. 258-3.
[54] Rec. Doc. 258-4.

the OSHA Citation prevented the Relator from fully and fairly presenting his case. Furthermore, DuPont's failure to produce the additional and apparently more informative leak calculations also prevented the Relator from fully and fairly presenting his case. As DuPont so ably pointed out, without evidence of dose, the Relator's burden of proving of "substantial risk information" is an exercise in futility. The 2 newly discovered leak calculations contained significantly more data from which dose may have been ascertained or approximated. DuPont's failure to produce the additional leak calculations in discovery precluded Relator from fully and fairly presenting his case.

In conclusion, the Court finds that Relator has established by clear and convincing evidence that the newly discovered leak calculations and the November 2014 OSHA Citation were called for in discovery. DuPont's failure to produce them is misconduct for the purposes of Rule 60(b)(3).[55] The Court further concludes that unavailability of this evidence impacted the integrity of the trial process and prevented Relator from fully and fairly presenting his case. It is important to emphasize that by this *Ruling* the Court does not find or imply that the outcome of the trial would have been different. Indeed, such an exacting standard is not imposed by Rule 60(b)(3). The Court is mindful that interference with a jury verdict is an extraordinary measure and, as such, calls "for the highest level of judicial restraint."[56] The Court is loathe to set aside the hard work and deliberative process of the jury, and the Court does not do so lightly, but the Court's duty to uphold the integrity of the judicial process requires the result reached herein.

---

[55] *Montgomery v Hall,* 592 F.2d 278, 279 (5th Cir. 1979).
[56] *Starns v. Avent,* 96 B.R. 620, 633-34 (M.D. La. 1989); *Thomas v. City of New York*, 293 F.R.D. 498, 507 (S.D.N.Y. 2013).

## V. RELIEF UNDER RULE 60(d)(3)

Relator moves alternatively to set aside the jury's verdict under Rule 60(d)(3) for fraud on the Court. In light of the Court's ruling on Realtor's 60(b)(3) motion, the Court does not reach Relator's alternative motion. Suffice to say, however, that "[g]enerally speaking only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court[57]. . . . Less egregious misconduct, such as nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court."[58] Fraud on the court is a narrow concept that should "embrace only the species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.[59] Less egregious misconduct comes within the scope of Rule 60(b)(3).[60] There is no evidence which suggests that relief under Rule 60(d)(3) would be required.

---

[57] *Ballew v. U.S. Dep't of Justice,* 244 F.3d 138, *3 (5th Cir. 2000) (citing *Rozier*, 573 F.2d at 1338).
[58] *Id.; See also Wilson v. Johns-Manville Sales Corp.*, 873 F.2d 869, 872 (5th Cir. 1989).
[59] *Wilson*, 873 F.2d at 872.
[60] *Id.* (citing *Kerwit Medical Products, Inc. v. N. & H. Instruments, Inc.* 616 F.2d 833, 837; *Rozier*, 573 F.2d at 1332).

## VI. CONCLUSION

Accordingly, Relator Jeffrey M. Simoneaux's *Renewed Motion for Judgment as a Matter of Law, Motion for New Trial Under Rule 59, and Motion for Relief of Judgment Under Rule 60*[61] is DENIED; and

Relator's *Supplemental Motion for Relief from Judgment Under Rule 60(b)(3) and Alternatively Motion to Set Aside Judgment Under Rule 60(d)(3)*[62] is GRANTED on Rule 60(b)(3) grounds.[63]

Signed in Baton Rouge, Louisiana, on <u>June 25, 2015</u>.

*Shelly D. Dick*
**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[61] Rec. Doc. 213.
[62] Rec. Doc. 241.
[63] As discussed in section V of this *Ruling*, the Court did not reach the merits on the alternative relief sought by Relator under Rule 60(d)(3).