UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA, ET AL. JEFFREY M. SIMONEAUX, Relator | CIVIL ACTION 12-219 |
| | JUDGE: SHELLY D. DICK |
| VERSUS | MAGISTRATE JUDGE: STEPHEN RIEDLINGER |
| E.I. du PONT de NEMOURS AND COMPANY | |

**RULING**

Before the Court is the Defendant, E.I. DuPont de Nemours and Co.'s (DuPont) *Motion to Reconsider Ruling under Rule 59(e).*[1] DuPont moves the Court to reconsider and vacate its Ruling granting Relief from Judgment Under Rule 60(b)(3).[2] The Motion is opposed[3] by the Realtor, Jeffrey M. Simoneaux.

**I.    BACKGROUND AND HISTORY**

Relator, a former DuPont employee, sued DuPont under the *qui tam* provision of the False Claims Act ("FCA").[4] Simoneaux claimed that DuPont violated the FCA because it failed to comply with its obligation under 15 U.S.C. § 2607 of the Toxic Substances and Control Act ("TSCA") to report releases of SO2, SO3, and sulfuric acid at its Burnside Louisiana Plant to the Environmental Protection Agency (EPA).

DuPont's Burnside facility manufactures and/or processes sulfur trioxide (SO3), sulfur dioxide (SO2), and sulfuric acid. There is no dispute that, during the relevant time period, DuPont experienced leaks of SO2, SO3, and sulfuric acid from its process

---
[1] Rec. Doc. 269.
[2] Rec. Doc. 263.
[3] Rec. Doc. 285.
[4] 31 U.S.C. §3729(a)(1)(G).

equipment at its Burnside facility. It was also undisputed that "an exposure to sulfur dioxide, sulfur trioxide or sulfuric acid in sufficient dose and duration can cause human health effects, and that those effects have been known for years generally in the scientific community".[5] Furthermore, SO2 and SO3 are known to be carcinogenic and are listed under the TSCA.

To address its leaking process equipment, pending a more permanent solution, DuPont engineered a vacuum hose and piping system designed to capture the sulfuric gases leaking from its equipment. Simoneaux disputed the efficacy of DuPont's leak mitigation/capture system contending that DuPont had an obligation to report the sulfuric gas leaks at its Burnside facility to the EPA. According to Simoneaux, by failing to report leaks to the EPA under TSCA, DuPont avoided or decreased monetary penalties owed to the Government, thereby violating the FCA.

After a 2-week trial, the jury returned a verdict for DuPont and the Court entered *Judgment*[6] in accordance with the verdict. Several months later, Simoneaux discovered evidence produced by DuPont in a related case. Based on this newly discovered evidence, and among other relief requested, Simoneaux moved for relief from the *Judgment* under FRCP Rule 60(b)(3).[7] The Court found that DuPont's failure to produce certain evidence pertaining to leak calculations and an OSHA Citation was misconduct for purposes of Rule 60(b)(3) which prevented the Relator from fully and fairly presenting his case. The Court granted the Relator's motion, vacated the verdict,

---

[5] Rec. Doc. 53-1, p. 7.
[6] Rec. Doc. 212.
[7] Rec. Doc. 241.

and ordered a new trial.[8]  DuPont seeks reconsideration[9] of the Court's Rule 60(b)(3) Ruling vacating the verdict.

## II.   LAW AND ANALYSIS

"A Rule 59(e) motion 'calls into question the correctness of a judgment'".[10]  Relief from a judgment is warranted under Rule 59(e) when the moving party demonstrates a mistake of law or fact.[11]  "Relief under Rule 59(e) is an extraordinary remedy that should be used sparingly."[12]  As previously stated, the Court was loathe to set aside the jury's verdict and remains mindful that interference with a jury verdict is an extraordinary measure calling for the "highest level of restraint".[13]  Accordingly, the Court has again carefully and scrupulously examined the evidence and the exhibits offered by the parties in support of and in opposition to the instant Rule 59(e) Motion. The Court has also laboriously studied and considered the arguments advanced by the parties.

### A.  The Leak Calculations

It is undisputed that DuPont did not produce documents bearing bates numbers DLF0001891 – DLF00001899[14] in the above-captioned litigation. These documents were produced by DuPont in other related litigation and discovered by the Relator after trial in this case.[15]  The documents at issue (DLF0001891 – DLF00001899) contain data

---

[8] Rec. Doc. 263.
[9] Rec. Doc. 269.
[10] *Templet v. Hydrochem, Inc.,* 367 F.3d 473, 478 (5th Cir. 2004) (*quoting In re Transtexas Gas Corp.,* 303 F.3d 571, 581 (5th Cir. 2002)).
[11] *Robicheaux v. Caldwell*, 986 F. Supp. 2d 749, 754 (E.D. La. 2013), *reconsideration denied* (Jan. 13, 2014).
[12] *Indep. Coca-Cola Employees' Union of Lake Charles*, No. 1060 v. Coca-Cola Bottling Co. United, Inc., No. 04-30142, 2004 WL 2554847, at *4 (5th Cir. Nov. 11, 2004) citing *Templet*, 367 F.3d at 479.
[13] Rec. Doc. 263, *citing, Starns v. Avent,* 96 B.R. 620, 633-34 (M.D. La. 1989); *Thomas v. City of New York*, 293 F.R.D. 498,507 (S.D.N.Y. 2013).
[14] Rec. Doc. 213-3.
[15] DuPont produced the subject documents in the Leo Scott case (3:13cv00741), The *Scott* case is related because it involves claims that DuPont took adverse employment actions against Scott in violation of 31 U.S.C. § 3730(h) of the Federal False Claims Act because of his participation in Simoneaux's qui

pertaining to two leak calculations.[16]  DuPont argues that the data and calculations reflected on DLF0001891 – 0001899 are identical to data and calculations contained on documents bearing different bates numbers that DuPont did produce to the Relator in this litigation. DuPont maintains that "the information contained in the [subject] documents is not new and was in Realtor's possession during discovery and trial."[17] DuPont submits that "the record unmistakably shows that these 'new' calculations were actually produced to Relator during discovery, were used by Relator's counsel to question witnesses during depositions, and were available to Relator during trial".[18] Essentially, DuPont posits that if the substantive information was produced by DuPont and available to Relator during pretrial proceedings and trial, although bearing different identifying numbers, there was no discovery misconduct which would warrant new trial under Rule 60(b)(3).  In short, if Relator had the substantive information, Relator was not prevented from fully and fairly presenting his case.

The Court agrees that not every technical discovery violation warrants a new trial.[19]  Hence, if the underlying data and information was produced in discovery, albeit bearing different numerical identifiers, Realtor was not prevented from fully and fairly presenting his case and the verdict was not unfairly obtained.  However, such is not the case here.

---

tam action.  Scott allegedly participated in a deposition regarding Simoneaux's claims in the instant matter.  The plaintiff in the *Scott* case is represented by the same counsel as the Plaintiff/Relator in the above captioned matter.
[16] DLF0001891-DLF0001894 reflect calculations pertaining to emissions from a .77 inch diameter hole; DLF0001895-DLF0001899 reflect calculations pertaining to emissions from a 1.125 square inch hole.
[17] Rec. Doc. 269-1, p. 3.
[18] *Id.* at p. 1.
[19] The Court denied Relator's Rule 60(b)(3) Motion for New Trial on the grounds that DuPont failed to produce Engineering Standards and Management of Change documents because they were immaterial and irrelevant and, thus, did not affect Relators ability to fully and fairly present his claims. Rec. Doc. 263.

DuPont submits that the data, calculations and information on DLF0001891 – DLF0001894 (pertaining to a .77 inch leak calculation)[20] is the same as the data, calculations and information contained on DSF000083,[21] which was produced by DuPont in this case and offered by Relator at trial as Pl. Ex. 130.  DuPont submits that DLF0001895 – DLF0001899 (pertaining to a 1.125 inch leak calculation),[22] contains identical data, calculations and information as contained on DSF0001036,[23] produced by DuPont in this case and  identified as Pl. Ex. 283.[24]

A careful review and comparison of the documents not produced by DuPont (DLF0001891-1899) to the documents produced by DuPont (DSF000083 and DSF0001036) belie DuPont's contention.

Foremost, the information contained on DLF0001894 and DLF0001899, not produced by DuPont, is *nowhere* revealed on the documents that DuPont did produce. DLF0001894 and DLF0001899 contain notes of assumptions, measurements and values used by the DuPont employees who made the subject leak calculations. It is axiomatic that the calculations are only as accurate as the assumptions and data values used. Relator was denied the opportunity to challenge the assumptions and values underlying the computations. For example, DuPont calculated a total SO2 and SO3 release volume from a 1.125 square inch leak area over a 10 hour period.[25]  However, DLF0001899, which was never produced, even under a different numbered identifier, reveals that the leak calculation *assumed* a 70% capture rate.  Relator was prevented

---

[20] Rec. Doc. 269-2, pp. 1-4.
[21] Rec. Doc. 269-3.
[22] Rec. Doc. 269-9, pp. 1-5.
[23] Rec. Doc. 269-11, p. 6.
[24] Pl. Ex. 283 was not offered at trial but is reflected on Relator's Proposed Pretrial Order. Rec. Doc. 82.
[25] DLF0001895 (Rec. Doc. 213-3; Rec. Doc. 269-9) not produced by DuPont but which is the same calculation reflected on DSF0001036 (Rec. Doc. 269-10) which was produced by DuPont.

from challenging the efficacy of this assumption and, thus, precluded from challenging the leak volumes. According to DuPont, "dose makes the poison." Relator was deprived of discoverable evidence which showed that DuPont was assuming a 70% dose reduction. Justice and fair play dictate that the Relator be given an opportunity to contest the calculations based on the assumptions applied by DuPont but never revealed to Relator.

**B. OSHA Citation**

On November 14, 2014, approximately 2 months before trial, DuPont was cited and fined by OSHA for five (5) violations of the Occupational Health and Safety Act of 1970.[26] The OSHA Citation was responsive to discovery requests by Relator[27] but was never produced by DuPont, despite Relator's specific request that DuPont supplement discovery with any OSHA related documents.[28] Significantly, OSHA charged DuPont with a violation deemed by OSHA to be "Serious". Specifically, OSHA cited DuPont for failing to "ensure that the [system used] to mitigate S02 and S03 leaks from process equipment … [was] suitable for application in a process characterized by high temperatures and the formation of acid in the presence of moisture".[29]

DuPont argues that, as an FCA claim, the only relevant time frame is before suit was filed. Citing 15 U.S.C.A. § 2607(e),[30] DuPont argues that it was under no legal

---

[26] "Citation and Notification of Penalty", issued to DuPont, Burnside facility on November 14, 2014. Rec. Doc. 241-4, hereinafter "OSHA Citation".
[27] Relator's Request No. 47 called for DuPont to "Produce all documents provided to or received from OSHA by DuPont concerning gas leaks and/or employee exposure or potential exposure to S02 and/or S03 at the DuPont Burnside facility between December 1, 2011 and the present." (Rec. Doc. 213-9).
[28] Relator's request stated: "Also, I wanted to remind you of DuPont's obligation to supplement its production of documents. I imagine there are additional documents pertaining to the hose system, gas leaks, the recent visit by OSHA, etc. that are responsive to our requests." Rec. Doc. 213-8.
[29] Rec. Doc. 241-4, OSHA Citation Item Number 3.
[30] ("Any person who manufactures, processes, or distributes in commerce a chemical substance or mixture and who obtains information which reasonably supports the conclusion that such substance or

obligation to report TSCA "substantial risk information" to the EPA, once the EPA had actual knowledge. DuPont contends that "[a]ny obligation DuPont conceivably had to notify the EPA of 'substantial risk information' under TSCA ceased with the actual notice given to the United States and EPA"[31] by the filing of Relator's instant suit. Hence, DuPont submits that "[t]he OSHA Citation in November 2014 adds nothing to the issue of whether or not DuPont had substantial risk information before the EPA was put on notice."[32]  DuPont's argument is unpersuasive and illogical.

There is no authority for the proposition that a chemical manufacturer, such as DuPont, is entitled to be ignorant of "substantial risk information" unless and until a regulating authority finds issue or concern with its manufacturing process or products. The relevant inquiry is whether DuPont's admittedly leaking process equipment, notwithstanding its mitigation efforts, posed a substantial risk of harm to persons or the environment triggering an obligation to report the risk to the EPA.  If DuPont knew or should have known that its leak mitigation efforts were unsuitable or ineffective, then arguably DuPont had a duty to report leaks of chemicals known to be carcinogenic and known to react with the ambient atmosphere to produce acid rain.  The Court finds that OSHA's determination that DuPont failed to ensure the suitability of the materials it utilized in its leak recovery process is probative of whether DuPont knew or should have known of a substantial risk. DuPont cites no law which suggests that a chemical manufacturer can plead ignorance of "substantial risk information" unless or until a regulator takes issue.

---

mixture presents a substantial risk of injury to health or the environment shall immediately inform the Administrator of such information **unless such person has actual knowledge that the Administrator has been adequately informed of such information.**") (Emphasis added).
[31] Rec. Doc. 269-1 p. 11.
[32] Rec. Doc. 269-1 p. 2.

DuPont presented an unmistakable theme at trial which inferred that OSHA found no fault with DuPont's leak recovery system.[33] At the very least, Relator was prevented from rebutting DuPont's inferences that OSHA took no action with evidence of the OSHA Citation at issue. Likewise, the OSHA Citation would have undoubtedly provided fertile ground for the cross examination of DuPont's plant manager, who testified on direct examination:

> Q: And you've talked about the fact that OSHA has been made aware of the leaks by several anonymous calls. Have they taken any action against the plant in terms of telling the plant these leaks are not safe for employees to work around?
>
> A: No.[34]

For the foregoing reasons, DuPont's *Motion for Reconsideration*[35] of the Court's Ruling[36] granting a relief from Judgment and ordering a new trial is DENIED.

Signed in Baton Rouge, Louisiana on <u>November 2, 2015</u>.

*Shelly D. Dick*

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[33] Rec. Doc. 263, pp. 13-14.
[34] Rec. Doc. 258-3.
[35] Rec. Doc. 269.
[36] Rec. Doc. 263.