UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JEFFREY M. SIMONEAUX                                             CIVIL DOCKET

VERSUS                                                                          12-219-SDD-EWD

E.I. du PONT de NEMOURS & COMPANY

## RULING

Before the Court is Defendant E.I. du Pont de Nemours and Company's ("DuPont") *Motion to Reconsider*[1] the Court's denial of Dupont's *Motion to Certify Appeal of the Court's Ruling Denying Dupont's Motion for Summary Judgment*. The Motion is opposed[2] and the parties have briefed the issue extensively[3]. After reviewing the memoranda of the parties and the applicable law, DuPont's *Motion to Reconsider* shall be GRANTED, and the Court shall certify its *Ruling* denying DuPont's *Motion for Summary Judgment*.[4]

### I.   FACTUAL BACKGROUND

It is undisputed that during relevant time periods the process equipment at DuPont's plant in Burnside, Louisiana was leaking sulfur dioxide ($SO_2$), sulfur trioxide ($SO_3$), and sulfuric acid mist (collectively "sulfuric leaks"). To ameliorate the leaks while awaiting new process equipment, DuPont designed and installed a vacuum hose system intended to capture and recover the fugitive emissions.[5] Simoneaux, a DuPont employee,

---

[1] Rec. Doc. 286.
[2] Rec. Doc. 290.
[3] Rec. Doc. 294; Rec. Doc. 302; and Rec. Doc. 305.
[4] Rec. Doc. 47. At the close of oral argument, the Court issued oral reasons denying DuPont's *Motion for Summary Judgment*. Rec. Doc. 27.
[5] It was also undisputed that the subject leaks were not permitted emission.

claims that the vacuum recovery system was ineffective and that DuPont had an obligation under the Toxic Substances Control Act (TSCA) to report the sulfuric leaks to the EPA.[6] Simoneaux claims that DuPont knowingly concealed its TSCA reporting obligation in order to avoid paying environmental penalties to the Government, thus giving rise to a reverse false claim under the False Claims Act (FCA).

To prevail on a reverse false claim under the FCA, the Plaintiff must show that the Defendant knowingly and improperly concealed or avoided an *obligation* to pay or transmit money to the Government.[7] The central issue in this case is the meaning and interpretation of the term *obligation* as used in the FCA. Dupont contends that regulatory fines and penalties which have not actually been levied or imposed are not "obligations" under the FCA.[8] This was the legal issue presented by DuPont on summary judgment[9] and the sole issue which DuPont again seeks to certify for appeal.[10]

## II.     PROCEDURAL BACKGROUND AND POSTURE

The complicated procedural background and unique posture of this case factor significantly into the Court's analysis. On April 4, 2014, the Court denied DuPont's summary judgment motion seeking dismissal of Simoneaux's reverse false claim action as a matter of law.[11]  DuPont argued that, because statutory penalties under the TSCA are contingent on an order by the EPA Administrator, Simoneaux could not satisfy the

---

[6] Simoneaux claimed that the sulfuric leaks posed a substantial risk to people or the environment under the TSCA.
[7] 31 USC § 3729(a)(1)(G).
[8] According to DuPont, "In this case, the central issue for summary judgment is a controlling question of law, namely, does the term "obligation", as defined in 31 USC § 3729(a)(1)(G), include liability for fines and penalties under regulatory statutes, even where such fines or penalties have not actually been imposed on a party?" DuPont's Motion to Certify Appeal, Rec. 48-1, p.2.
[9]  Rec. Doc. 27; Rec. Doc. 42.
[10] Rec. Doc. 48.
[11] Rec. Doc. 47.

FCA's obligation requirement necessary to establish a *prima facie* case. In denying summary judgment, the Court applied 2009 amendments to the FCA[12] which codified a definition of the term "obligation" as follows:

> an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment.[13]

Finding the statutory definition of "obligation" to be clear and unambiguous, the Court strictly construed the statutory definition and found that, because the TSCA gives rise to an obligation to report chemical leaks[14] and the failure to do so would result in the imposition of a fine or penalty[15], whether fixed or not, the 2009 Congressional definition of obligation had been satisfied; therefore, the Court denied DuPont's summary judgment motion. Subsequently, DuPont sought certification of the Court's April 4, 2014 *Ruling* pursuant to 28 U.S.C. § 1292.[16] The Court denied DuPont's request for certification, finding that "DuPont ha[d] failed to demonstrate [that there was] a substantial ground for difference of opinion as to the Court's Ruling" within the Fifth Circuit.[17]

---

[12] Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111-21, 123 Stat 1617 (2009).
[13] 31 U.S.C. § 3729(b)(3).
It is also noteworthy that the reverse false claim provisions of the FCA were recodified as part of the 2009 amendments, and provide for liability for any person who:
> knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowing and improperly avoids or decreases an obligation to pay or transmit money or property to the Government…. 31 USC § 3729(a)(1)(G).

[14] Pursuant to 15 U.S.C. § 2607, any person who manufactures, processes, or distributes a chemical substance in commerce and who obtains information that reasonably supports the conclusion that such substance presents a substantial risk of injury to health or to the environment shall immediately inform the Administrator of the EPA of such information, "unless such person has actual knowledge that the Administrator has been adequately informed of such information." 15 U.S.C. § 2607(e).
[15] Failure to provide substantial risk information is unlawful, 15 U.S.C. § 2614, and results in a mandatory penalty up to $37,500 for each violation, 15 U.S.C. § 2615(a)(1). 28 CFR § 85.3.
[16] Rec. Doc. 48.
[17] Rec. Doc. 66, p. 6.

The matter proceeded to trial and after hearing evidence for two weeks, the jury returned a verdict for DuPont and the Court entered a *Judgment* in accordance with the jury's verdict.[18] However, subsequently the Court set aside the verdict and judgment under Rule 60(b)(3) upon finding by clear and convincing evidence that DuPont obtained the verdict through "fraud…, misrepresentation, or other misconduct" such that the Relator was prevented from fully and fairly presenting his case.[19]

Facing a lengthy and costly re-trial, DuPont urges the Court to reconsider its 2014 *Ruling*[20] denying DuPont's Motion to certify for appeal the denial of its Motion for Summary Judgment.[21] DuPont submits that new jurisprudence from the Eastern District of Louisiana and the Fifth Circuit Court of Appeal warrant reconsideration of the Court's earlier *Ruling* denying certification. Simoneaux disagrees with DuPont's position, arguing that reconsideration is not warranted because the newer decisions do not clarify the applicable substantive law at issue. Building upon this premise, Simoneaux further contends that DuPont has once again failed to show a substantial ground for difference of opinion necessary for interlocutory certification. The Court is reluctant to reward DuPont with a second bite at the apple but, owing to the time and expense of a second trial and an intervening case decided by another District Court (within the Fifth Circuit) which suggests grounds for a difference of opinion on a controlling issue, the Court will grant DuPont's motion for the following reasons.

---

[18] Rec. Doc. 212.
[19] Rec. Doc. 263.
[20] Rec. Doc. 66.
[21] Rec. Doc. 27. DuPont filed a second *Motion for Summary Judgment* (Rec. Doc. 53) which is not the subject of the present Motion re-urging certification.

## III.   RULE 54(B) MOTION FOR RECONSIDERATION

### A.  LEGAL STANDARD

Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, district courts have discretion to reconsider interlocutory rulings "at any time before the entry of a judgment adjudicating all [of] the claims and all [of] the parties' rights and liabilities."[22]  A Rule 54(b) Motion for Reconsideration is left to the broad discretion of the Court.[23]  Nevertheless, "rulings should only be reconsidered where the moving party has presented substantial reasons for reconsideration."[24]  Within the Middle District, "three major grounds" have been recognized as justifying reconsideration: "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice."[25]

### B.  ANALYSIS

DuPont contends that intervening jurisprudence presents a change in controlling law warranting reconsideration and certification for appeal.  The Court is unpersuaded that the intervening jurisprudence cited by DuPont mandates a different conclusion.  However, owing to the time and expense of retrial, the Court will reconsider its earlier denial of an interlocutory appeal solely to minimize the time and expense risks presented by the unique procedural posture of this case.

---

[22] Fed. R.Civ.P. 54(b); *Livingston Downs v. Jefferson Downs*, 259 F.Supp.2d 471, 474-75 (M.D.La. 2002)(citing *Zapata Gulf Marine Corp. v. P.R. Mar. Shipping Auth.*, 925 F.2d 812, 815 (5th Cir. 1991)). While DuPont's instant Motion was not technically advanced before "entry of judgment", the Court will treat DuPont's Motion as timely because the Court vacated its earlier Judgment.
[23] *McClung v. Gautreaux*, 2011 WL 4062387, *1 (M.D.La. Sept. 13, 2011)(quoting *Brown v. Wichita County, Tex*, No. 05-108, 2011 WL 1562567, *2 (N.D. Tex. April 26, 2011)).
[24] *State of Louisiana v. Sprint Communications Co.*, 899 F.Supp. 282, 284 (M.D.La. 1995).
[25] *Kumasi v. Unknown Cochran*, 2015 WL 5033594, *2 (M.D.La. Aug. 25, 2015)(quoting *J.M.C. v. La. Bd. of Elementary and Secondary Educ.*, 584 F.Supp.2d 894, 896 (M.D.La. Oct. 20, 2008)(quoting *Shields v. Shetler*, 120 F.R.D. 123, 126 (D.Colo. 1998)).

## IV.     28 U.S.C. § 1292(B) RECONSIDERATION

### A. LEGAL STANDARD

28 U.S.C. § 1292(b) permits a district court to certify for appeal an "order not otherwise appealable," when the Court is" of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation...".

"The burden of demonstrating the necessity of an interlocutory appeal is on the moving party."[26]  Although the decision to permit an interlocutory appeal is within the discretion of the court,[27]  the Fifth Circuit instructs that "[i]nterlocutory appeals are generally disfavored, and statutes permitting them must be strictly construed."[28]

### B. ANALYSIS

The question of whether TSCA requirements give rise to an *obligation* under the FCA is a controlling question of law, the determination of which may materially advance the ultimate termination of this litigation.  Hence, the Court's analysis once again turns on whether there is a substantial ground for difference of opinion regarding this controlling question of law.

Courts have determined that there is a substantial ground for difference of opinion in instances where:

> '[A] trial court rules in a manner which appears contrary to the rulings of all Courts of Appeals which have reached the issue, if the circuits are in dispute

---

[26] *In re L.L.P. & D. Marine, Inc.*, 1998 WL 66100, at *1 (citing *Orson, Inc. v. Miramax Film Corp.*, 867 F.Supp. 319, 320 (E.D.Pa. 1994), *aff'd in part, vacated in part on other grounds*, 79 F.3d 1358 (1996)).
[27] *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 405, n. 9, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004).
[28] *Mae v. Hurst*, 613 Fed.Appx. 314, 318 (5th Cir. 2015)(unpublished)(quoting *Allen v. Okam Holdings, Inc.*, 116 F.3d 153, 154 (5th Cir. 1997)(per curiam)).

on the question and the Court of Appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.' But simply because a court is the first to rule on a question or counsel disagrees on applicable precedent does not qualify the issue as one over which there is substantial disagreement.[29]

At the time the Court entered its *Ruling* denying DuPont's summary judgment motion, no other district court within the Fifth Circuit had applied the newly defined term, obligation, to a reverse FCA claim premised on facts arising after the 2009 FCA amendments. Therefore, the issue before the Court was *res nova*. However, the simple fact that this Court was the first to rule on the proper interpretation of the 2009 amendments to a reverse FCA claim does not render it an issue over which there is substantial disagreement necessitating an interlocutory appeal.

DuPont contends that intervening jurisprudence[30] indicates a difference of opinion regarding the interpretation of the term "obligation" after the 2009 FCA amendments. Having reviewed the three decisions relied on by DuPont, the Court finds that one, *U.S. ex rel. Guth v. Roedel Parsons Koch Blache Balhoff & McCollister*,[31] lends support for DuPont's position. The other two cases relied on by DuPont to advance its contention that there is a substantial ground for a difference of opinion are not applicable.[32] Only the *Guth* case presents a reverse false claim arising after the 2009 FCA amendments.

---

[29] *Mosaic Underwriting Service, Inc. v. Moncla Marine Operations, L.L.C.*, 2013 WL 2903083, *9(E.D. La June 12, 2013) (quoting *Ryan*, 444 F.Supp.2d 718, 723-24 (N.D. Tex 2006) (citation omitted) (quoting 4 Am.Jur.2d Appellate Review § 128 (2005)).
[30] *U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354 (5th Cir. 2014); *U.S. ex rel. McClain v. Fluor Enterprises, Inc.*, 605 F.Supp.3d 705 (E.D. La 2014); and *U.S. ex rel. Guth v. Roedel Parsons Koch Blache Balhoff & McCollister*, 2014 WL 7274913 (E.D.La. Dec. 18, 2014).
[31] *U.S. ex rel. Guth v. Roedel Parsons Koch Blache Balhoff & McCollister*, 2014 WL 7274913 (E.D.La. Dec. 18, 2014) aff'd, *U.S. ex rel Guth v. Roedel Parsons Koch Blache Balhoff & McCollister*, 2015 WL 5693302 (5th Cir. Sept. 29, 2015).
[32] *U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354 (5th Cir. 2014), and *U.S. ex rel. McClain v. Fluor Enterprises, Inc.*, 605 F.Supp.3d 705 (E.D. La 2014). Factually and substantively, neither case involves a

The relator in *Guth* asserted several claims under the FCA against a private law firm engaged to do expropriation work for the government. Inter alia, the Relator in *Guth* claimed that alleged double billing by the firm created an *obligation* to refund the double payments to the government under the reverse false claim provision of the FCA.[33] Although the *Guth* court acknowledged that the FCA had been "reorganized" in 2009 by FERA, the Court did not address the statutory definition of obligation enacted by the 2009 FCA amendments in its analysis.[34] Instead, the court relied solely upon the Fifth Circuit's 2008 decision, *U.S. ex rel. Marcy v. Rowan Cos.*, *Inc.*, as binding authority for the types of obligations that could support a reverse FCA claim. Specifically, the *Guth* court focused on the following language from *Marcy*—a direct quote and the holding from an earlier Fifth Circuit opinion, *U.S. ex rel. Bain v. Georgia Gulf Corp.*:

> [t]he reverse false claims act does not extend to the potential or contingent obligations to pay the government fines or penalties which have not been levied or assessed (and as to which no formal proceedings to do so have been instituted) and which do not arise out of an economic relationship between the government and the defendant (such as a lease or a contract or the like) under which the government provides some benefit to the defendant wholly or partially in exchange for an agreed or expected payment or transfer of property by (or on behalf of) the defendant to (or for the economic benefit of) the government.[35]

Relying on the foregoing, the *Guth* court held that the relator's reverse FCA claim was "predicated on 'potential or contingent obligations to pay the government [amounts] which have not been levied or assessed (and to which no formal proceedings to do so have

---

claim brought under the reverse FCA post-2009 amendments. The allegations in *McClain* and the false claim for payment allegation in *Spicer* preceded the 2009 amendments to the FCA.
[33] 31 U.S.C. § 3729(a)(1)(G).
[34] 2014 WL 7274913, n. 20.
[35] *Id.* at *7.  (quoting *Marcy*, 520 F.3d at 391) (quoting *U.S. ex rel. Bain v. Ga. Gulf Corp.*, 386 F.3d 648, 657 (5th Cir. 2004)(emphasis omitted)).

8

been instituted).'"[36] Additionally, the *Guth* court found that the relator had no relationship with the government as contemplated by the Reverse False Claim provision. Therefore, the relator's claim was dismissed for failure to plead a violation of 31 U.S.C. § 3729(a)(1)(G). In an unpublished opinion, the Fifth Circuit affirmed the *Guth* decision.[37]

The Court finds that, in light of *Guth*, there is a lack of consensus on whether the 2009 promulgation of a statutory definition of the term obligation alters the analysis of reverse FCA claims. In its prior *Ruling*, this Court found that Fifth Circuit jurisprudence preceding the 2009 FCA amendments, including *Bain* and *Marcy*, had been superseded and no longer served as binding authority for what qualifies as an "obligation" in reverse FCA claims. In construing the statutory definition of obligation, the Court determined that an obligation included a duty to pay a fine or penalty under regulatory statutes, such as the TSCA, even though those fines may not be fixed. While this Court considers its analysis accurate, the recent decision in *Guth* demonstrates that, within this Circuit, there is a substantial ground for difference of opinion as to whether *Bain* and *Marcy* still serve as binding precedent for the proper meaning of an obligation in reverse FCA claims. Hence, the Court finds that DuPont has satisfied its burden of establishing the three necessary factors for interlocutory certification under 28 U.S.C. § 1292(b) and that an immediate appeal would materially advance the ultimate termination of the litigation.

---

[36] *Id.* (quoting *Marcy*, 520 F.3d at 391).
[37] *U.S. ex rel. Guth v. Roedel Parsons Koch Blache Balhoff & McCollister*, 2015 WL 5693302 (5th Cir. Sept. 29, 2015). The Fifth Circuit explained that "[p]ursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5." In affirming the district court's decision regarding the reverse FCA claim, the Fifth Circuit found that the relator had failed to plead sufficient facts to allow the court to "'draw the reasonable inference' that Roedel Parsons double billed for unnecessary legal work" hence the court could likewise not "infer that an obligation to refund the government ha[d] arisen." *Id.* at *4. Even assuming that relator had successfully established that such an obligation existed, the Fifth Circuit found that the district court had properly dismissed the claim for failing to plead a plausible reverse FCA claim under § 3729(a)(1)(G) and also cited to *Marcy*. *Id.*

## V. CONCLUSION

Considering that the Court has found that its *Ruling* denying DuPont's *Motion for Summary Judgment* involves a controlling question of law as to whether there is a substantial ground for difference of opinion, and that an immediate appeal from the *Ruling* may materially advance the ultimate termination of this litigation, the Court hereby certifies its April 14, 2014 *Ruling* denying DuPont's summary judgment motion for appeal.

For the foregoing reasons, DuPont's *Motion to Reconsider*[38] shall be GRANTED, and the Court shall certify its *Ruling*[39] denying DuPont's *Motion for Summary Judgment*.[40]

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on January 20, 2016.

        *Shelly D. Dick*
**JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[38] Rec. Doc. 286.
[39] Rec. Doc. 47.
[40] Rec. Doc. 27.